**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LAURA VAZQUEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:26-cv-12475** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KATSIS ORTHODONTIC ASSOCIATES, LTD.,** | ) | **Jury Trial Demanded** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff, Laura Vazquez ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Katsis Orthodontic Associates, Ltd. ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, as amended ("ADA") seeking redress for Defendant's discrimination on the basis of Plaintiff's disability, harassment on the basis of Plaintiff's disability, Defendant's failure to accommodate Plaintiff's disability, and Defendant's retaliation against Plaintiff for engaging in protected activity under the ADA.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and 28 U.S.C. § 1343(a)(4).

3. This action is authorized and instituted pursuant to 42 U.S.C. § 12101 *et seq.*

4. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

5. Venue of this action also properly lies in the Northern District of Illinois, Eastern Division, pursuant to 42 U.S.C. § 2000e-5(f)(3), as incorporated by 42 U.S.C. § 12117(a).

## ADMINISTRATIVE PREREQUISITES

6. All conditions precedent to jurisdiction under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*, have occurred or been complied with.

7. Plaintiff filed a charge of discrimination on the basis of disability and retaliation with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 440-2026-10818 (attached hereto as Exhibit "A").

8. On or about September 8, 2026, Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

9. This Complaint has been filed within ninety (90) days of receipt of the EEOC's Dismissal and Notice of Right to Sue.

## PARTIES

10. At all times material to the allegations of this Complaint, Plaintiff, Laura Vazquez, resides in DuPage County, in the State of Illinois.

11. At all times material to the allegations in this Complaint, Defendant, Katsis Orthodontic Associates, Ltd., is a corporation doing business in and for DuPage County, Illinois, whose address is 1213 Joliet St, West Chicago, IL 60185-3700.

12. Plaintiff was employed by Defendant as an "employee" within the meaning of ADA, 42 U.S.C. § 12111(4).

13. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by ADA, and has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(5)(A).

## BACKGROUND FACTS

14. Plaintiff worked for Defendant as a Patient Scheduling Coordinator from on or about September 21, 2021, until she was terminated on or about August 19, 2026.

15. Defendant operates orthodontic offices in Bloomingdale, Bartlett, and West Chicago, Illinois.

16. Plaintiff suffers from a permanently disabling left knee condition.

17. Plaintiff's left knee condition causes significant pain and makes it difficult to walk, stand, and climb stairs, thereby substantially limiting her major life activities.

18. Plaintiff is a "qualified individual" as defined under the ADA.

19. Plaintiff is "disabled" as defined under the ADA.

20. Plaintiff is a member of a protected class because of her disabilities.

21. Plaintiff's disabilities substantially limit one or more major life activities, including daily life and work activities.

22. Despite these disabilities, Plaintiff was qualified and able to perform the essential functions of her job, with or without reasonable accommodation.

23. Plaintiff successfully performed the duties of the Patient Scheduling Coordinator position and met or exceeded Defendant's reasonable performance expectations until her termination.

24. In or around late April 2025, Plaintiff informed Dr. John Katsis ("Dr. Katsis") of her upcoming medically necessary knee surgery.

25. On or about July 7, 2025, Plaintiff underwent a total left knee replacement.

26. On or about October 5, 2025, Plaintiff returned to work at Defendant's Bartlett location with restrictions and an a request for accommodations from her orthopedic surgeon.

27. When Plaintiff returned to work, she walked with a cane.

28. Plaintiff's physician restricted her use of stairs.

29. Plaintiff's physician also instructed her to walk and move for approximately five to ten minutes each hour.

30. Plaintiff provided Dr. Katsis with medical documentation concerning these restrictions and her need for accommodation.

31. In providing this medical documentation and accompanying restrictions, Plaintiff was requesting a reasonable accommodation and engaging in protected activity.

32. Because Defendant was understaffed, Plaintiff was often unable to move or take breaks as her orthopedic surgeon recommended and frequently worked through lunch.

33. The Bartlett location also required navigating approximately one flight of stairs.

34. However, the Bartlett location was the office closest to Plaintiff's home.

35. Because of this, from her return in October 2025 until mid-April 2026, Plaintiff worked at the Bartlett location and had to use those stairs to enter and leave the office.

36. During the winter of 2025-2026, the Bartlett stairs became unstable and numerous steps were cracked.

37. The front and rear entrances were deteriorated and crumbling, and the rear ramp was in disrepair.

38. Defendant's Bloomingdale location required navigating approximately two flights of stairs.

39. Plaintiff informed Dr. Katsis that she had difficulty safely accessing Defendant's Bloomingdale and Bartlett locations because of her knee condition and her restriction against using stairs.

40. In or around mid-April 2026, Dr. Katsis began remodeling the Bartlett office and assigned Plaintiff to work at Defendant's West Chicago location because that office did not require her to use stairs.

41. In or around April 2026, Dr. Katsis offered to purchase a mobile/adjustable desk as an accommodation so that Plaintiff could stand, change positions, and move while continuing to perform her duties.

42. Dr. Katsis represented that he would repair and address the accessibility problems at the Bartlett location so that Plaintiff could eventually work closer to her home at a location she could safely access.

43. Plaintiff was hopeful that these accommodations would prove helpful, and that Defendant was genuinely concerned with her wellbeing; unfortunately, this proved to not be true.

44. Although the West Chicago location eliminated the need to use stairs, it added approximately thirty minutes to Plaintiff's commute, and the extended driving time to and from that location caused significant pain in Plaintiff's surgically replaced knee.

45. Aware of Plaintiff's ongoing knee condition, Dr. Katsis permitted Plaintiff a fifteen-minute grace period, allowing her to report to work at approximately 7:45 a.m. instead of 7:30 a.m.

46. Despite the grace period, Plaintiff was occasionally a few minutes late because of the extended drive, traffic, and the physical difficulties associated with her disability.

47. After, Plaintiff began working at the West Chicago location, Defendant's tune towards her accommodations began to change.

48. Dr. Katsis never purchased or provided the mobile/adjustable desk that he previously promised Plaintiff.

49. Further, the accessibility problems at the Bartlett location were not corrected so that Plaintiff could safely work there before her termination.

50. Accordingly, Defendant did not actually engage in the interactive process to find a reasonable accommodation for Plaintiff.

51. Defendant did not provide the desk or complete the Bartlett repairs, and it did not propose any other means of meeting Plaintiff's need to move regularly during the workday or to work at an accessible office closer to home.

52. Plaintiff's knee did not recover as anticipated, and her orthopedic surgeon recommended a revision of her knee replacement, reinforcing the prolonged/ permanent nature of her disability.

53. Dr. Katsis knew that Plaintiff remained under active orthopedic care and continued to require accommodations.

54. Beginning in or around April 2026, Plaintiff's manager, Elise Orengo ("Orengo"), yelled at or confronted Plaintiff on approximately four occasions, including by yelling at her in front of patients, an act that non-disabled patients were not subjected to.

55. Therefore, Plaintiff submitted a written complaint about Orengo to Dr. Katsis and asked that the situation be investigated and addressed, as Plaintiff suspected she was being treated differently on the basis of her disability.

56. However, Defendant did not launch a prompt, thorough, or objective investigation into Plaintiff's complaint, and did not meaningfully resolve Plaintiff's complaint.

57. By in or around late July and early August 2026, Dr. Katsis began subjecting Plaintiff to increased scrutiny and micromanagement.

58. Plaintiff was questioned or criticized over minor matters, including her arrival time, telephone coverage, and handling of patient calls.

59. The questioning and criticism of Plaintiff's arrival time occurred after Plaintiff had engaged in protected activity, and disregarded the fact that Dr. Katsis had supposedly granted Plaintiff with a grace-period accommodation.

60. Plaintiff raised concerns regarding the change in treatment directly with Dr. Katsis and specifically told him that she believed she was being retaliated against.

61. In making this complaint, Plaintiff was engaging in protected activity.

62. Plaintiff reminded Dr. Katsis that she remained under her orthopedic surgeon's care, continued to experience complications from her knee replacement, and was doing her best to perform her job within her medical limitations.

63. On or about August 9, 2026, Dr. Katsis placed Plaintiff on a Corrective Action Notice ("CAN").

64. During this disciplinary action, Dr. Katsis again questioned Plaintiff's tardiness, her handling of a patient telephone call, and her alleged inability to answer every incoming call.

65. At the time, Plaintiff was responsible for handling calls and patient matters for all three of Defendant's offices and, at the West Chicago office, for assisting walk-in patients seeking consultations, including Spanish-speaking patients who needed assistance.

66. Plaintiff explained that when she could not answer an incoming call, she was usually already assisting another caller or completing a patient intake form, that she returned voicemails as soon as she was able, and that she had asked other employees for help with telephone coverage, efforts she had documented in contemporaneous emails and interoffice communications.

67. Further, non-disabled, similarly situated employees were not questioned about the same incidents.

68. Plaintiff disputed the CAN and submitted a written rebuttal.

69. In her rebuttal, Plaintiff again raised her ongoing medical restrictions and accommodation concerns.

70. In her rebuttal, Plaintiff also informed Dr. Katsis that she believed his actions violated his obligations in connection with the interactive accommodation process.

71. In making this complaint, Plaintiff was engaging in protected activity.

72. During approximately the week preceding Plaintiff's termination, Dr. Katsis stopped responding to Plaintiff's emails and workplace messages and largely ignored her attempts to communicate with him.

73. On or about August 19, 2026, approximately ten days after the CAN and Plaintiff's written rebuttal, Plaintiff returned from lunch to the West Chicago office and Dr. Katsis confronted her regarding a patient telephone call.

74. Plaintiff explained that she had documented the information provided by the patient and communicated the matter to another employee because it required a doctor's attention and was outside the scope of her authority.

75. Consistent with Company policy and her job description, Plaintiff had not provided medical advice to the patient.

76. Dr. Katsis then abruptly told Plaintiff that they were “done” and terminated her employment.

77. When Plaintiff asked why, Dr. Katsis stated that he could not trust her.

78. Dr. Katsis then presented Plaintiff with a previously prepared involuntary termination letter.

79. Importantly, the termination paperwork had been prepared before Dr. Katsis confronted Plaintiff regarding the patient telephone call.

80. Orengo and Defendant’s Financial Coordinator, Chante Kocher, were present when Dr. Katsis terminated Plaintiff.

81. Plaintiff was immediately directed to leave and was escorted from the building, further adding to the humiliation and mental anguish caused by Defendant’s actions.

82. When Plaintiff said she intended to apply for unemployment benefits, Dr. Katsis told her that he would fight her unemployment claim.

83. At the time of her termination, Plaintiff remained under active orthopedic care, continued to have medical restrictions, and was facing revision surgery.

84. The stated reason for Plaintiff’s termination, that Dr. Katsis could not trust Plaintiff, was pretextual.

85. Dr. Katsis also made disparaging comments about Plaintiff's disability and need for accommodation, including commenting that she "had a lot of doctor's appointments".

86. At all relevant times, Defendant had knowledge of Plaintiff’s disability and her need for accommodation.

87. Despite this knowledge, Defendant failed to provide Plaintiff with a reasonable accommodation.

88. Although Defendant assigned Plaintiff to the West Chicago location, permitted a fifteen-minute grace period, offered to repair the steps, and offered to purchase a mobile/adjustable desk, Defendant failed to actually follow through on these promises in a meaningful way.

89. Specifically, Defendant later disciplined Plaintiff for late arrival times despite the fifteen-minute grace period, never repaired the steps, and never purchased a mobile/ adjustable desk.

90. Accordingly, Defendant denied Plaintiff's request for reasonable accommodation.

91. The timing of Plaintiff's termination demonstrates a causal connection between her engagement in protected activity and her unlawful termination.

92. Those outside of Plaintiff's protected class (non-disabled) were not subject to the same treatment as Plaintiff.

93. Plaintiff suffered multiple adverse employment actions including, but not limited to, being placed on the CAN and being terminated.

94. Plaintiff can show that she engaged in statutorily protected activity, a necessary component of her retaliation claim, because Plaintiff requested reasonable accommodations for her disability, complained to Dr. Katsis that she believed she was being retaliated against, and challenged Defendant's handling of the interactive accommodation process in her written rebuttal to the CAN.

95. Plaintiff met or exceeded Defendant's performance expectations during the entire duration of her employment.

96. Before the discriminatory August 9, 2026 CAN, Plaintiff had not received any written discipline during her nearly five years of employment.

97. Defendant's disability-based discrimination, harassment, failure to accommodate, and retaliation against Plaintiff, coupled with Defendant's termination of Plaintiff, took a heavy mental toll on Plaintiff, who suffered and continues to suffer severe mental anguish and distress.

**COUNT I**
**Violation of the Americans with Disabilities Act**
**(Disability-Based Discrimination)**

98. Plaintiff repeats and re-alleges paragraphs 1-97 as if fully stated herein.

99. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*

100. Plaintiff met or exceeded performance expectations throughout the duration of her employment with Defendant.

101. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

102. Defendant terminated Plaintiff's employment on the basis of Plaintiff's disability.

103. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

104. Plaintiff is a member of a protected class under the ADA, due to Plaintiff's disability.

105. Defendant acted with malice or reckless indifference to Plaintiff's protected rights.

106. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT II**
**Violation of Americans with Disabilities Act**
**(Failure to Accommodate)**

107. Plaintiff repeats and re-alleges paragraphs 1-97 as if fully stated herein.

108. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*

109. Plaintiff is a qualified individual with a disability.

110. Defendant was aware of the disability and the need for accommodations, as Plaintiff requested a reasonable accommodation in the form of a work location she could safely access without using stairs and the ability to walk and move for approximately five to ten minutes each hour.

111. Although Defendant engaged with Plaintiff concerning the request, Defendant failed to provide Plaintiff a reasonable accommodation.

112. Plaintiff's requests were not an undue hardship on Defendant.

113. Defendant did not accommodate Plaintiff's disability.

114. Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*, due to Plaintiff's disability.

115. Defendant acted with malice or reckless indifference to Plaintiff's protected rights.

116. As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT III
**Violation of Americans with Disabilities Act**
**(Disability-Based Harassment)**

117. Plaintiff repeats and re-alleges paragraphs 1-97 as if fully stated herein.

118. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and harassed the Plaintiff on the basis of Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*

119. Defendant knew or should have known of the disability-based harassment.

120. The disability-based harassment was severe or pervasive.

121. The disability-based harassment was offensive subjectively and objectively.

122. Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*, due to Plaintiff's disability.

123. Defendant acted with malice or reckless indifference to Plaintiff's protected rights.

124. As a direct and proximate result of the harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT IV
**Violation of Americans with Disabilities Act**
**(Retaliation)**

125. Plaintiff repeats and re-alleges paragraphs 1-97 as if fully stated herein.

126. Plaintiff is a member of a protected class under 42 U.S.C. § 12101, *et seq.*

127. During Plaintiff's employment with Defendant, Plaintiff requested reasonable accommodations for her disability, complained to Dr. Katsis that she believed she was being retaliated against, and raised her accommodation concerns in a written rebuttal to the CAN.

128. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*

129. In response to Plaintiff's protected activity, Defendant retaliated against Plaintiff by placing her on the CAN and terminating her employment.

130. By virtue of the foregoing, Defendant retaliated against Plaintiff based on her protected activity, thereby violating Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*

131. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity, specifically, being placed on the CAN and termination.

132. The timing of Plaintiff's unlawful termination indicates that there was a causal connection between her protected activity and subsequent adverse employment action.

133. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

134. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award the following relief:

a. Back pay;

b. Payment of interest on all back pay and benefits recoverable;

c. Front pay;

d. Loss of benefits;

e. Compensatory and punitive damages;

f. Reasonable attorney fees and costs;

g. Award pre-judgment interest if applicable; and

h. Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues so triable be submitted to and determined by a jury.

Dated October 12, 2026.

/s/ *Nathan C. Volheim*
**NATHAN C. VOLHEIM, ESQ.**
IL Bar No.: 6302103
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (630) 568-3056
Fax (630) 575 - 8188
nvolheim@sulaimanlaw.com
*Attorney for Plaintiff*

/s/ *Sophia Steere*
**SOPHIA STEERE, ESQ.**
KY Bar No.: 100481
**SULAIMAN LAW GROUP LTD.**

2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331) 307-7634
Fax (630) 575 - 8188
ssteere@atlaslawcenter.com
*Attorney for Plaintiff*

**/s/ *Jake Fondel***
**JAKE FONDEL, ESQ.**
IL Bar No.: 6354446
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331) 272-5953
Fax (630) 575 - 8188
jfondel@atlaslawcenter.com
*Attorney for Plaintiff*