# Exhibit A

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: ☐ FEPA ☒ EEOC

Agency(ies) Charge No(s):

**Illinois Department of Human Rights** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs., Mx.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| | [redacted] | [redacted] |

| Street Address | City, State and ZIP Code | Email Address |
|---|---|---|
| [redacted] | [redacted] | [redacted] |
| S | City, State and ZIP Code | Email Address |
| [redacted] | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| Katsis Orthodontic Associates, Ltd. | 15+ | (630) 894-5557 |

| Street Address | City, State and ZIP Code | Email Address |
|---|---|---|
| | | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | 15+ | |

| Street Address | City, State and ZIP Code | Email Address |
|---|---|---|
| | | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☑ RETALIATION ☐ AGE ☑ DISABILIT ☐ GENETIC INFORMATION
☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE

| Earliest | Latest |
|---|---|
| 04/2026 | 08/19/2026 |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

I, Laura Vazquez (disabled), was employed by Katsis Orthodontic Associates, Ltd. as a Patient Scheduling Coordinator from on or about September 21, 2021, until on or about August 19, 2026, when I was unlawfully terminated on the basis of my disability. I have a physical impairment that substantially limits major life activities. Regardless of my disability, I was qualified to perform the essential functions of my job, with or without reasonable accommodation.

The following is a non-exhaustive list of the disability discrimination, harassment, and retaliation I was subjected to:

On or about July 7, 2025, I underwent a total left knee replacement. My knee condition substantially limited major life activities, including walking, standing, climbing stairs, and other activities involving the use of my left leg. Dr. John Katsis was aware of my surgery, resulting limitations, and continuing medical treatment.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *When necessary for State and Local Agency Requirements*

I declare under penalty of perjury that the above is true and correct.

09/03/2026

*Date* *Charging Party Signature*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: Agency(ies) Charge No(s):

☐ FEPA

☒ EEOC

**Illinois Department of Human Rights** and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Following my surgery, I returned to work on or about October 5, 2025, at the Bartlett location with restrictions and recommendations from my orthopedic surgeon. My physician restricted my use of stairs and instructed me to walk and move for approximately five to ten minutes each hour. I provided Dr. Katsis with medical documentation concerning these restrictions and my need for accommodation. Throughout my recovery, I continued attending follow-up appointments with my orthopedic surgeon and kept Dr. Katsis informed of my condition, restrictions, and medical progress. I regularly provided updated medical information and advised him that I remained under my orthopedic surgeon's care.

The practice operates locations in Bloomingdale, Bartlett, and West Chicago. The Bloomingdale location required me to navigate approximately two flights of stairs, which was incompatible with my medical restriction. After returning from my knee replacement, I worked at the Bartlett location, which was the office closest to my home. The Bartlett location required navigating approximately one flight of stairs. I used the front entrance because it had sturdier handrails; however, during the winter of 2025-2026, the stairs became unstable and numerous steps were cracked. Additionally, the front and rear entrances at Bartlett were deteriorated and crumbling, and the rear ramp was also in disrepair. I made Dr. Katsis aware that I had difficulty safely accessing these locations because of my knee condition and restriction against using stairs.

In or around mid April 2026, Dr. Katsis began remodeling the Bartlett office and assigned me to work at the West Chicago location because that office did not require me to use stairs. I physically worked at the West Chicago office from in or around mid April 2026, through my termination on August 19, 2026.

Although the West Chicago location eliminated the need to use stairs, the extended driving time to and from that location caused significant pain in my surgically replaced knee and exacerbated the limitations associated with my disability. My concern was not simply the inconvenience of a longer commute. Prolonged driving was physically painful because of my knee condition. Dr. Katsis was aware of my ongoing condition and permitted me a fifteen-minute grace period, allowing me to report at approximately 7:45 a.m. instead of 7:30 a.m. Despite the grace period, I was occasionally only a few minutes late due to the extended drive, traffic, and the physical difficulties associated with my knee. I nevertheless continued reporting to work and performing my duties despite my pain and ongoing medical treatment.

My orthopedic surgeon also instructed me to walk and move for approximately five to ten minutes each hour. Dr. Katsis was aware of this medical recommendation. Because the practice was understaffed, however, I was often unable to move or take breaks as recommended and frequently worked through lunch.

Dr. Katsis specifically offered to purchase a mobile/adjustable desk as an accommodation so that I could stand, change positions, and move while continuing to perform my duties. The proposed desk would have allowed me to better comply with my orthopedic surgeon's recommendation that I regularly move throughout the workday. Despite knowing of my medical restriction and specifically offering this accommodation, Dr. Katsis never purchased or provided the mobile desk.

Accordingly, although my assignment to West Chicago addressed my restriction against using stairs, it did not fully accommodate my documented limitations. The extended driving aggravated my knee condition, while the mobile desk that Dr. Katsis had offered to address my medically documented need for regular movement was never provided.

Dr. Katsis also represented that he would repair and address the accessibility problems at the Bartlett location so that I could eventually work closer to my home at a location that I could safely access. Working from an accessible Bartlett office would have allowed me to avoid stairs inconsistent with my medical restriction while also reducing the prolonged driving that aggravated my knee. Despite these representations, the accessibility issues at Bartlett were not corrected so that I could safely work there before my termination.

Meanwhile, my knee did not recover as anticipated, and I ultimately learned that I would require a revision of the knee replacement. Dr. Katsis knew that I remained under active orthopedic care and continued to require accommodations.

Beginning in or around April 2026, I also experienced repeated problems with my manager, Elise Orengo. Elise yelled at or confronted me on approximately four occasions, including yelling at me in front of patients. I submitted a written complaint to Dr. Katsis and requested that the situation be investigated and addressed. Despite my complaint, my concerns were not meaningfully resolved.

By in or around late July and early August 2026, Dr. Katsis began subjecting me to increased scrutiny and micromanagement. I was questioned or criticized over minor matters, including my arrival time, telephone coverage, and handling of patient calls. This scrutiny occurred despite Dr. Katsis's knowledge of my continuing medical condition and the grace period he had provided regarding my arrival time.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

09/03/2026 [signature]

*Date* *Charging Party Signature*

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(*month, day, year*)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: Agency(ies) Charge No(s):

☐ FEPA

☒ EEOC

**Illinois Department of Human Rights** and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I raised concerns regarding the change in treatment directly with Dr. Katsis and specifically told him that I believed I was being retaliated against. I reminded him that I remained under my orthopedic surgeon's care, continued experiencing complications from my knee replacement, and was doing my best to perform my job within my medical limitations.

On or about August 9, 2026, Dr. Katsis placed me on a Corrective Action Notice ("CAN"). During this disciplinary action, Dr. Katsis again questioned my tardiness, my handling of a patient telephone call, and my alleged inability to answer every incoming call. At the time, I was responsible for assisting with calls and patient matters involving all three practice locations. At the West Chicago location, I also assisted walk-in patients seeking consultations, including Spanish-speaking patients who needed assistance.

I explained that when I could not answer an incoming call, I was often already assisting another caller or completing a patient intake form. I regularly communicated that I was occupied with another patient or task, returned voicemails as soon as I was able, and reached out to other employees for assistance with telephone coverage. I sent contemporaneous emails and interoffice communications documenting these efforts and my requests for assistance.

I disputed the CAN and submitted a written rebuttal. In my rebuttal, I again raised my ongoing medical restrictions and accommodation concerns and informed Dr. Katsis that I believed his actions violated his obligations in connection with the interactive accommodation process.

Following the August 9, 2026 CAN and my written rebuttal, Dr. Katsis became increasingly unresponsive. During approximately the week preceding my termination, Dr. Katsis stopped responding to my emails and workplace messages and largely ignored my attempts to communicate with him.

On or about August 19, 2026, only approximately ten days after the CAN and my written rebuttal concerning my accommodation rights, I returned from lunch to the West Chicago office and Dr. Katsis confronted me regarding a patient telephone call. I explained that I had documented the information provided by the patient and communicated the matter to another employee because it required a doctor's attention and was outside the scope of my authority. I had not provided medical advice to the patient.

Dr. Katsis then abruptly told me that we were "done" and terminated my employment. When I asked why, he stated that he could not trust me. Dr. Katsis then presented me with a previously prepared involuntary termination letter. Because the termination paperwork had already been prepared before he confronted me regarding the patient call, and because I had challenged his treatment and raised my accommodation rights shortly before my termination, I believe the stated reason for my termination was pretextual.

Manager Elise Orengo, about whom I had previously complained, and Financial Coordinator Chante Kocher were present during my termination. After nearly five years of employment, I was immediately directed to leave the workplace and escorted from the building. When I stated that I intended to apply for unemployment benefits, Dr. Katsis told me that he would fight my unemployment claim.

At the time of my termination, I remained under active orthopedic care, continued to have medical restrictions, and was facing revision surgery. Despite my continuing accommodation needs, the mobile desk Dr. Katsis had offered was never provided and the closer Bartlett location had not been made safely accessible. Instead, after I continued raising my accommodation needs, expressly complained of retaliation, challenged Dr. Katsis's handling of the interactive process, and submitted my written rebuttal to the August 9, 2026 CAN, I was terminated approximately ten days later.

My employer effectively denied my request for reasonable accommodation, failed to engage with me in an interactive process to determine the appropriate accommodation as required by the ADA, and ultimately terminated my employment on the basis of my disability.

Thus, I have been discriminated against because of my disability and retaliated against in violation of the Americans with Disabilities Act, as amended and (775ILCS 5/) Illinois Human Rights Act.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

09/03/2026

*Date* *Charging Party Signature*

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*)

Vinesign

# Certificate of Completion

**Verification Complete**

The document has been officially verified.

| | |
|---|---|
| **Document Status** | ✔ Signed & Verified |
| **Document Name** | Final EEOC Charge for Signature- Laura Vazquez |
| **Sender Name** | Falcon Phoenix |
| **Document Key** | 662A2B66-1BE1-4F9E-9704-AC858D9B23F4 |

**Recipient 1**

Laura Vazquez

[redacted]

Order 1

**IP Address**

[redacted]

**Signature**

## Document History

| Activity | Date & Time | Recipient | Activity Details |
|---|---|---|---|
| Document Completed | 09/03/2026 19:59 UTC | Laura Vazquez | Signed by Laura Vazquez [redacted] |
| Document Viewed | 09/03/2026 19:56 UTC | Laura Vazquez | Viewed by Laura Vazquez [redacted] |
| Document Viewed | 09/03/2026 19:04 UTC | Laura Vazquez | Viewed by Laura Vazquez [redacted] |
| Document Viewed | 09/03/2026 19:04 UTC | Laura Vazquez | Viewed by Laura Vazquez [redacted] |
| Document Sent | 09/03/2026 19:04 UTC | Laura Vazquez | Sent out via sms to Laura Vazquez [redacted] |
| Document Sent | 09/03/2026 19:04 UTC | Laura Vazquez | Sent out via email to Laura Vazquez [redacted] |
| Document Created | 09/03/2026 19:04 UTC | | [redacted] |